UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6071-CR-HURLEY/VITUNAC

UNITED STATES OF AMERICA,

    Plaintiff,

-vs-

HENRY CORDOZA,

    Defendant.

_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The United States of America, through the undersigned Assistant United States Attorney, files its response to the defendant's Motion to Suppress Evidence, namely, two firearms, false identification and any and all statements. The United States of America requests this Court to deny defendant's Motion and in support of said request alleges the following:

1. The defendant is charged with possession of two firearms while being a convicted felon.

2. On February 12, 2000, just after midnight, reserve deputies Jurado and Garcia were dispatched to the 2600 block of NW 20th Court in unincorporated Broward County in reference to a suspicious vehicle located within that block. Upon arriving in the area, Jurado and Garcia made contact with the complainant. She advised that there was a vehicle that had been parked on the block

for several hours. This seemed particularly strange because the 2600 block of NW 20th Street is a dead end street. She pointed out the suspicious vehicle to Jurado and Garcia, and they approached the vehicle to investigate.

3. As Jurado and Garcia approached the vehicle, Jurado noticed the defendant slumped behind the steering wheel. The vehicle was a maroon, four-door Oldsmobile bearing North Carolina license plates. The engine was not running. Jurado and Garcia called to the defendant several times and received no response. Garcia then approached the driver's side door from the rear while Jurado positioned himself perpendicular to the driver's side door. Both deputies then called to the defendant several more times and received no response. Garcia then opened the door. Once the door was opened, Jurado and Garcia attempted to wake the defendant verbally to no avail. Finally, Garcia got extremely close to the defendant, and he awoke. Jurado and Garcia noticed the strong odor of an alcoholic beverage emanating from inside the car. They asked the defendant to step outside of the vehicle. They suspected the defendant of driving while under the influence of an alcoholic beverage.

4. Jurado and Garcia had the defendant step to the rear of the vehicle. The defendant appeared aware of his surroundings. He identified himself as John Jamal Hackett. The defendant asked on two occasions if he could re-enter the vehicle to retrieve his cigarettes. On both occasions, Jurado told him no. Jurado noticed that the defendant kept looking inside of the vehicle in a manner he deemed to be suspicious based on his training and experience. The defendant asked a third time if he could get his cigarettes out of the car. Once again, Jurado said no. Jurado asked the defendant what he had in the car. The defendant quickly responded that he had nothing in the car and told Jurado he could go and look for himself.

5. Jurado looked into the vehicle and noticed that the keys were still in the ignition. Upon further review, Jurado observed several beer cans in the vehicle. He saw 2 or 3 empty beer cans on the back seat. He saw one open container in the front. He saw 3 or 4 full cans in a bag on the front seat. Adjacent to the bag containing the full cans of beer, Jurado saw a .38 revolver lying on the seat with the butt facing outward. Jurado used his pen to retrieve the firearm and removed it from the vehicle. Once the firearm was outside the vehicle, Jurado placed it on the ground in front of him. Jurado and Garcia notified their sergeant of their situation and were told that Sgt. Wolfe was on the way and would handle the call. They did not arrest the defendant.

6. When Sgt. Wolfe arrived on the scene, Jurado advised him of what had transpired. Wolfe secured the weapon. Wolfe arrested the defendant and advised him of his Miranda warnings. The defendant told Wolfe that he knew the routine. Wolfe asked the defendant his biographical information. The defendant identified himself as John Jamal Hackett with a date of birth of 10/2/72. The defendant insisted that he had given Wolfe correct information. The defendant told Wolfe he had proof of who he was, and it was in his wallet. Wolfe retrieved the defendant's wallet and found a birth certificate and a social security card. The spelling of the defendant's middle name was different on each of the documents. The defendant indicated that he was visiting family who lived in the area.

7. Wolfe began to knock on residence doors. He discovered that the defendant's true name was Henry Carlton CORDOZA. Documents in the vehicle also contained that name. An inventory search was done of the vehicle. In the trunk were found approximately one hundred rounds of ammunition and a Rossi .22 caliber firearm. The defendant was transported to the Broward County jail. At no time was the defendant interrogated. Once Sgt. Wolfe got back to the

car, the defendant, while trying to calculate the amount of jail time he was facing, stated that he was looking at about twenty years in prison.

**MEMORANDUM OF LAW**

Deputies Jurado and Garcia were well within their authority to approach the defendant's car and question him concerning his identity and reason for being in the area. Terry v. Ohio, 392 U.S. 1,6-7 (1968); Adams v. Williams, 407 U.S. 143, 146 (1972). The deputies were summoned to the area due to a suspicious vehicle in the area. They had spoken to the actual complainant. She identified the defendant's vehicle as the aforementioned suspicious vehicle. They found the defendant slumped over the steering wheel unresponsive to their verbal calls. The defendant was not physically restrained. The deputies did not display their weapons. Their detention and inquiry were brief and did not involve questions beyond request for identification and explanation of defendant's presence. United States v. Abokhai, 829 F. 2d 666, 670 (8th Cir. 1987). There was nothing illegal about their initial approach, request for defendant to exit the vehicle or temporary detention while ascertaining his identity.

Deputies Jurado and Garcia were well within their authority to further their investigation based upon the defendant's conduct. United States v. Tipton, 3 F.3d 1119,1123 (7th Cir. 1993); United States v. Briggman, 931 F.2d 705, 709 (11th Cir. 1991). The deputies had an extremely difficult time waking the defendant. When they asked him to step from the vehicle, he had a strong odor of an alcoholic beverage emanating from both his person and the vehicle. The defendant incessantly requested to re-enter the vehicle allegedly to retrieve his cigarettes. The defendant continued to look suspiciously into the vehicle. The defendant was unable to dispel the deputies concerns. The defendant had been detained for less than twenty minutes. There was nothing illegal

4

about the length of the defendant's detention.

***.38 Revolver***. Deputies Jurado and Garcia were well within their authority to search the vehicle upon receiving valid consent from the defendant. The defendant claims that he could not have given valid consent because he was intoxicated. In United States v. Rambo, 789 F.2d 1289, 1297 (8th Cir. 1986), the court noted, "However, the mere fact that one has taken drugs, or is intoxicated, or mentally agitated, does not render consent involuntary. In each case, the question is one of mental awareness so that the act of consent was the consensual act of one who knew what he [or she] was doing and had a reasonable appreciation of the nature and significance of his [or her] actions." In United States v. Gipp, 147 F.3d 680, 686 (8th Cir. 1998), the court found that although the defendant may have been under the influence of an intoxicant, he had answered all of the officers' questions intelligently, behaved rationally, and, except for some nervous behavior, appeared normal. The government contends that the exact situation occurred in the present case. According to Jurado, the defendant appeared to be aware of his surroundings. The defendant did not stumble while exiting the vehicle or walking to the rear of it. His speech was not slurred. He provided his name (although false) and date of birth (although false) when asked. The false name he gave matched the false name on the birth certificate and social security card. If it were not for his numerous requests to get back in the vehicle and his suspicious focus on the inside of the vehicle, Jurado never would have asked him if he had anything in the vehicle. When asked about the contents of the vehicle, the defendant advised Jurado that he could go and look for himself. The defendant's consent was valid and voluntary.

The environment in which the defendant gave consent also suggests that the defendant's consent was voluntary. In Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973), the Supreme Court

5

articulated six factors to be considered when evaluating the environment in which an individual gives consent. The factors were whether the individual was detained and questioned for a long or short time; whether the individual was threatened or intimidated by the police; whether the individual relied on any promises or misrepresentations made by the police; whether the individual was in custody or under arrest when he gave consent; whether the encounter took place in a public or secluded place; and whether the individual objected to the search or watched silently. Applying those factors to the present case lead to the defendant having voluntarily consented to the search of his vehicle. The defendant's detention and questioning was minimal (less than twenty minutes). The defendant was not threatened or intimidated in any way. No promises or misrepresentations were made by Jurado or Garcia. The defendant was not in custody or under arrest when he gave consent. The encounter took place on a public street (although it was a dead end street). The defendant did not object to the search but stood by in silence. There is nothing about the environment that would invalidate the defendant's consent. Therefore, the .38 revolver found on the front seat of the defendant's vehicle should not be suppressed.

***False Identification***. Sgt. Wolfe was well within his authority when he retrieved the false identification from the defendant's wallet. As soon as Wolfe arrived on the scene, Jurado advised him of the events and gave him the firearm. Wolfe secured the firearm. Wolfe then arrested the defendant and advised him of his Miranda warnings. The defendant indicated that he knew the routine. Wolfe then asked the defendant his name and date of birth. The defendant gave him the name of John Jamal Hackett and a date of birth of 10/2/72. Wolfe wanted to verify that the defendant had said he was born in 1972 because it was obvious to Wolfe, based on his training and experience, that the defendant was older than 27 years old. The defendant insisted that he was born

6

in 1972 and told Wolfe he had proof that the information he had just given was accurate. The defendant told Wolfe it was in his wallet, and Wolfe retrieved the documents from the defendant's wallet. Wolfe then noticed that the spelling of the defendant's name was different on the two documents. Up until the time that Wolfe retrieved the birth certificate and social security card, he had only asked the defendant routine booking questions. Although Miranda warnings had been given to the defendant, none are required for routine booking questions. Pennsylvania v. Muniz, 496 U.S. 582, 600-02 (1990). Questions regarding name, date of birth, place of birth and so forth have been defined as routine booking questions not requiring Miranda warnings because they are not asked with the purpose of eliciting incriminating responses. United States v. Shea, 150 F.3d 44, 48 (1st Cir. 1998) As such, they do not meet the definition of interrogation. The fact that a defendant's response turns out to be incriminating is irrelevant. United States v. Sweeting, 933 F.2d 962, 965 (11th Cir. 1991). The defendant was not being interrogated when he volunteered that he had proof of identification. The birth certificate and social security card should not be suppressed.

*.22 Rossi*.    Sgt. Wolfe was well within his authority to inventory the defendant's vehicle after the defendant had been arrested for the .38 caliber revolver. Once the defendant had been arrested and his vehicle was going to be towed, an inventory of the vehicle protects both the defendant (from loss of property) and the police (from claims for loss of property). Goodson v. City of Atlanta, 763 F.2d 1381, 1386 (11th Cir. 1985). While conducting a valid inventory search, deputies found a loaded, .22 Rossi rifle and approximately 100 rounds of ammunition. These items should not be suppressed.

**Statements**.    None of the defendant's statements were in response to any interrogation. His statements regarding his biographical information have already been discussed. The defendant

7

acknowledged that he was looking at approximately twenty years in prison. No one was questioning the defendant when he made that statement. The defendant was talking out loud trying to calculate the amount of time he was facing. As such, that statement cannot be said to violate his Miranda protection. None of the defendant's statements should be suppressed.

Respectfully submitted,

THOMAS E. SCOTT
UNITED STATES ATTORNEY

By: _____
Bruce O. Brown
Assistant United States Attorney
Florida Bar No. 999490
500 East Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
TEL: (954) 356-7255
FAX: (954) 356-7336
E-MAIL: bruce.brown2@justice.usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via facsimile (Fax number 561 833 0368) this 21st day of June, 2000 to: Lori Barrist, Assistant Federal Public Defender, 400 Australian Avenue North, Suite 300, West Palm Beach, FL 33401.

_____
Bruce O. Brown
Assistant United States Attorney