UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6071-CR-Hurley/Vitunac

UNITED STATES OF AMERICA,
　　　　Plaintiff,

-vs.-

HENRY CORDOZA,
　　　　Defendant.
_____/

### REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on general Order of Referral from United States District Judge Daniel T. K. Hurley. For the reasons stated below, it is hereby RECOMMENDED that Defendant's Motion to Suppress Evidence, filed May 19, 2000 (DE 23), be DENIED.

### I. BACKGROUND

1. Procedural History

On March 21, 2000, Defendant was indicted (DE 1) by a grand jury in the Southern District of Florida for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Counts I and II), and for possession of a firearm with an obliterated manufacturer's serial number, in violation of 18 U.S.C. § 922(k). An arrest warrant (DE 2) was subsequently issued for Defendant on the same day by Chief United States Magistrate Judge Lurana S. Snow.

On May 19, 2000, Defendant filed a Motion to Suppress Evidence (DE 23). On June 19,

1

2000, this Court held a hearing on the Defendant's Motion to Suppress, but had to suspend the hearing because the Government only made one ATF agent available to testify (with double hearsay evidence) and had not filed a written response despite being requested to do so by the Court. The United States filed a Response as ordered on June 21, 2000. On June 22, 2000, this Court held a full hearing on Defendant's Motion to Suppress.

## II. DEFENDANT'S WRITTEN MOTION TO SUPPRESS

Defendant's contends that all evidence seized at the time of his arrest and his statements should be suppressed because the search conducted by the officers was in violation of the Fourth and Fifth Amendments. First, Defendant argues that the search was not a result of voluntary consent because he was intoxicated at the time of the search. Defendant dropped this argument at the hearing, however, instead arguing that Defendant simply did not give any consent. Second, Defendant argues that any statements made to the officers by him were taken in violation of Miranda because he was in custody and subject to questioning. Defendant also argued at the hearing that Miranda warnings were not given to him until he was taken to the police station after arrest.

## III. GOVERNMENT'S WRITTEN RESPONSE

The Government asserts that the investigating officers had probable cause to look into Defendant's vehicle because Defendant was acting suspiciously and exhibited a strong odor of alcoholic beverage. Defendant was found, after a neighbor's complaint, to be slumped over the wheel of his car after midnight on February 12, 2000. Sheriff's Officers attempted to wake Defendant and finally opened the car door and shook him. (The Government filed a very fact-

specific response to Defendant's present motion, but there is no need to reiterate those stated facts in light of the complete factual summary provided herein).

The Government denies that Defendant was too intoxicated to give valid consent,[1] and argues that Defendant's consent was voluntary and knowing under the circumstances. The Government asserts that the .22 caliber Rossi rifle and ammunition found in the trunk of Defendant's vehicle was seized pursuant to a valid inventory search after arrest. Finally, with respect to statements given by Defendant at the scene, the Government contends that none was responsive to interrogation, but rather was in response to routine biographical questions or completely unsolicited by law enforcement.

## IV. THE EVIDENTIARY HEARING

Two law enforcement officers from the Broward County Sheriff's Department testified at the suppression hearing held before this Court on June 22, 2000. Part-time Sergeant Abe Jurado testified. Sergeant Jurado works part time with the Sheriff's Department and full time for the State of Florida Comptroller's Office. Sergeant Jurado has a bachelor's degree in electronics and a master's degree in business administration, and has worked in law enforcement for eight years. Sergeant Rafael Wolfe testified. Sergeant Wolfe has approximately fourteen years of law enforcement experience, including three years with the Burger County Sheriff's Office, since immigrating to the United States from Kingston, Jamaica. He is presently a road sergeant. The Defendant also testified at the hearing.

1. Court's Findings of Fact

---

[1] Defendant did not pursue this intoxication argument at the hearing, after two officers testified that he was not intoxicated at the time of his arrest. The argument is therefore moot.

This Court finds the following facts to be true based on the testimony of these three witnesses. On February 12, 2000, Broward County Reserve Sheriff's Officers Jurado and Garcia responded to a "suspicious person" call concerning a man who had been sleeping in his car for some time. The officers arrived at the 2600 block of N.W. 20th Court in Fort Lauderdale, Florida, and, after speaking to the complainant, noticed Defendant lying down in the driver's seat of a maroon Oldsmobile with North Carolina plates. The vehicle was parked and the engine was not running. The car was parked in front of an empty lot on a dead end street with four houses, two facing the street and two facing the opposite direction.

The officers approached Defendant's vehicle, but Defendant did not respond to the officers' repeated verbal calls through the window. Officer Garcia rapped on the driver's side door, but Defendant did not respond. Officer Garcia thus opened the car door and again called to Defendant to wake up; still not response. Finally, Officer Garcia shook Defendant awake by tapping him repeatedly on the shoulder. Upon waking Defendant, the officers noticed "the strong odor of an alcoholic beverage emanating from inside the car," as well as on the person of Defendant. The officers asked Defendant to get out of the car, and he complied. At this point, the officers state that they suspected Defendant of driving under the influence of alcohol. The evidence is undisputed, however, that, although smelling of alcohol, Defendant did not need help getting out of the vehicle, did not use the vehicle for balance, did not stagger or otherwise exhibit evidence of drunkenness, and did not have trouble speaking or understanding others.

After Defendant exited the vehicle, Officer Jurado asked him to stand at the rear of the car, directly behind the trunk. Defendant complied. Defendant identified himself to the officers as John Jamal Hackett. Defendant asked the officers several times for permission to retrieve his cigarettes from the car, but was denied permission to do so by Officer Jurado. Meanwhile,

Officer Jurado noticed that Defendant kept looking back into the vehicle through the rear window in a "suspicious" manner that made the officer concerned that a weapon was in the car. Curious about why Defendant wanted to get back into the car, Officer Jurado asked Defendant whether he had any weapons in the car. Defendant responded that he had nothing in the car and told Officer Jurado that he could look inside himself.

Officer Jurado took Defendant up on his offer to search the vehicle. Upon approaching the vehicle, Officer Jurado noticed an open beer can on the front seat, several more open beer cans on the back seat, and three unopened beer cans on the passenger seat near the arm rest. Upon closer inspection, Officer Jurado noticed a .38 caliber pistol tucked into the armrest, underneath the unopened beer cans, with the butt facing out. The weapon was in "plain view" of the officer's vantage point. Officer Jurado removed the firearm from the car using a pen, and placed it on the ground. Without yet placing Defendant under arrest, the officers requested Sergeant Wolfe, their supervisor, visit the scene.

Sergeant Wolfe arrived at the scene and was advised of what had transpired thus far. Sergeant Wolfe secured the .38 pistol, advised Defendant of his rights under Miranda, and placed him under arrest for loitering and prowling. Defendant stated that he "knew the routine," and again identified himself as John Jamal Hackett, with a date of birth of December 2, 1972. Defendant also claimed that he had been kicked out of his home and had nowhere else to go, so was sleeping in his car. The fact that Defendant claimed to be twenty-seven years old made Sergeant Wolfe suspicious because, in his opinion, Defendant looked much older than that. Sergeant Wolfe asked Defendant for identification and Defendant produced a social security card and birth certificate for a person named John Jamal Hackett. Upon inspection, Sergeant Wolfe noticed that the birth dates on the documents did not match and the names were spelled

5

differently.

After discovering these discrepancies, Sergeant Wolfe decided to look further into Defendant's true identity. While waiting for the teletype machine to run a report on Defendant's claimed identity, Defendant volunteered that he had been previously arrested in New York. Defendant also claimed that he was visiting a person on that street who lived in a house to the right, which Defendant pointed out by gesturing with his head. Sergeant Wolfe investigated this lead by knocking on the door of that house, at which point Defendant's aunt, Eula Mae, stated that Defendant's name was Henry and that "he must be in some kind of trouble." Yulamay summoned her sister, who lived next door, who stated that Henry's last name was Cordoza.

Upon learning the Defendant's real identity, Sergeant Wolfe directed his trainee, Sergeant Joseph, to conduct a routine inventory search of the vehicle before having it towed away. Sergeant Joseph discovered in the trunk, underneath some clothing and a spare tire, a loaded .22 caliber Rossi rifle and ammunition for both the rifle and pistol found in the front of the vehicle.

Once Sergeant Wolfe returned to the station with Defendant at about 5:30 a.m. There he learned that Defendant had outstanding warrants for his arrest in North Carolina. Defendant stated to Sergeant Wolfe that he would be an old man by the time he got out of jail this time, in about twenty years.

2. Defendant's Testimony

Defendant testified at the evidentiary hearing and contested nearly all of the evidence presented by the officers. Defendant testified as follows. Defendant had been in town for one month at the time he was arrested, having traveled to South Florida from North Carolina. Defendant was staying at the home of a relative, Ivory McCutcheon, Jr., in an apartment located approximately six blocks from the scene of his arrest. Defendant was aware that he had

6

outstanding warrants in North Carolina, and was therefore carrying false identification with him in the name of John Jamal Hackett. Defendant was working through a temp agency, doing labor-type work.

Because McCutcheon's landlord would not allow Defendant to stay in the apartment any longer, Defendant decided to move into a boarding house. Defendant intended to stay in his car for the night, on the street outside of his cousin's house, until he could check into the boarding house in the morning. Defendant was drinking beer and listening to the radio when he was awakened by the investigating officer's knock on the driver's side door with a flashlight.

Upon being roused from his sleep, Defendant obeyed the officer's order to get out of the car, but asked for his cigarettes from underneath the sun visor while exiting. His request was denied, and was denied again after a short discussion. Because Defendant was afraid of what he stated was the reputation of Broward Sheriff's Department for "beating up" suspects, he did not ask for his cigarettes anymore. Defendant was asked whether he had any weapons in his car. He responded that he did not. Defendant stated that he did not give consent to the officers to search his vehicle.

After Sergeant Wolfe arrived at the scene, Defendant was confronted with the inconsistencies contained in his fake identification documents and therefore tried to hide his nervousness. Sergeant Wolfe, Defendant said, instructed his deputy trainee to search the trunk of the car because "there's another gun in there." He contends that the trunk was searched twice. Defendant suspects that this information was given to Sergeant Wolfe by his cousin, to whom Wolfe had spoken during the investigation. Once the second weapon was found in the trunk of his care, Defendant admitted to Sergeant Wolfe that "he had me." Defendant contends that he was not given <u>Miranda</u> warnings until he arrived at the police station for booking. Defendant

7

denies stating to the officers that he was going away for life, for he has only five to six years to live because he was Hepatitis B and C.

Defendant admits that he had possession of the two weapons and the ammunition. Defendants admits that he was drinking while in the parked vehicle. Defendant admits that he lied to the police during the investigation, including presenting them with false identification in the name of John Jamal Hackett.

## V. DISCUSSION

### 1. Defendant Gave Consent to Search his Vehicle

It is clear from the record and testimony that Defendant granted the investigating officers consent to search his vehicle. Neither a warrant nor probable cause is required for government officers to conduct a search where the subject grants those officers voluntary consent to conduct a search. Schneckloth v. Bustamonte, 412 U.S. 218 (1973); Bumper v. North Carolina, 391 U.S. 543 (1968). Whether a subject has given voluntary consent is determined by the totality of the circumstances. Schneckloth, 412 U.S. at 227. Here, the totality of the circumstances clearly demonstrate that Defendant freely and voluntarily gave consent to Sergeant Jurado to search the vehicle. It is undisputed that, although smelling of alcohol, Defendant did not exhibit any signs of intoxication, and in fact seemed "lucid" and fully capable of understanding the situation. Further, this Court finds the testimony of Sergeant Jurado to be credible, while it does not accept Defendant's lone argument that he is "not stupid enough" to grant such consent. For these reasons, this Court finds that Defendant gave consent to search and thus has no grounds for suppression of the gun found in the front seat.

Even if Defendant did not grant consent to the search, the search is valid because the investigating officers had probable cause to arrest Defendant on charges of loitering and prowling or for driving under the influence of alcohol. Defendant was found sleeping in his vehicle on a public street, he and the interior of the car smelled of alcohol, and there were numerous full and empty beer cans in plain view and within Defendant's reach in the vehicle. The keys to the car were in the ignition. The responding officers spoke to the complainant personally, who confirmed that Defendant had been sitting in the car on the street for several hours. These facts gave rise to probable cause to arrest Defendant for either of these offenses and thereby search the vehicle incident to his arrest. See, e.g., United States v. Robinson, 414 U.S. 218, 268-69 (1973).

2. The Search of Defendant's Trunk was a Valid Inventory Search

The search of Defendant's trunk, which revealed the rifle and ammunition, was a valid inventory that did not require consent or probable cause. At the time Defendant's trunk was searched, Defendant was already under arrest for loitering and prowling and his vehicle was about to be towed away. According to the testimony of Sergeant Wolfe, Sheriff's Office policy is to conduct an inventory of an impounded vehicle's contents before it is towed away to protect both the department and the suspect's respective interests. Such an inventory is not subject to the Fourth Amendment requirements of probable cause or a warrant. New York v. Burger, 482 U.S. 691, 716-17 (1987); Colorado v. Bertine, 479 U.S. 367, 372 (1987). So long as the inventory is not based upon bad faith, it is valid. Florida v. Wells, 495 U.S. 1, 4 (1990).

In the case at bar, this Court finds that the inventory of Defendant's trunk was valid and not conducted in bad faith. The search was made after Defendant was placed under arrest and before Defendant's vehicle was towed away, in compliance with regular department policy. The

9

rifle and ammunition found in the trunk during that inventory search is therefore admissible.

3. <u>Defendant's Statements to the Arresting Officers Were Not Given in Violation of Miranda</u>

Defendant's statements to the investigating and arresting officers were not given in violation of <u>Miranda</u>. First, Defendant was never placed under arrest by the investigating officers, but was rather only arrested upon the arrival of Sergeant Wolfe. Because the investigating officers merely asked Defendant to stand at the back of the vehicle while they investigated his identity, Defendant was never under "formal arrest or [subject to] restraint on freedom of movement of the degree associated with formal arrest," and the officers were therefore not required to administer the <u>Miranda</u> warnings. <u>Stansbury v. California</u>, 511 U.S. 318 (1994); <u>see also</u> <u>Beckwith v. United States</u>, 425 U.S. 341 (1976).

Further, with respect to Defendant's post-arrest statements, this Court finds the testimony of Sergeant Jurado and Sergeant Wolfe credible and finds that Defendant was given <u>Miranda</u> warnings after his arrest by Wolfe at the scene. Defendant stated that he understood those warnings, and Defendant did not invoke his right to remain silent nor request counsel. Although Defendant had been drinking, the evidence was undisputed that he was "lucid" and able to understand the warnings. Therefore, all of Defendant's statements to the officers *after* his arrest by Sergeant Wolfe were given in compliance with the requirements of <u>Miranda</u>.

Finally, even if <u>Miranda</u> warnings had not been given, it is well established that routine booking questions, even if asked in the context of custodial interrogation, do not trigger the requirements of <u>Miranda</u>. <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 599 (1990). Such routine questions include asking a suspect to identify himself or state his purpose in being at a certain place. <u>Id.</u> Further, of course, <u>Miranda</u> does not apply at all where the government officers are not asking any questions of the suspect. In the case at bar, every statement made by Defendant was

either 1) in response to routine booking questions such as "What is your name?" or 2) made completely voluntarily without any questioning at all by the investigating and arresting officers. As Sergeant Wolfe testified at the hearing, Defendant was "rambling" and constantly talking while Sergeant Wolfe was silently investigating via teletype Defendant's true identity. Such unsolicited, voluntary statements are not covered by Miranda and cannot be suppressed.

For these reasons, it is hereby RECOMMENDED that Defendant's Motion to Suppress Evidence, filed May 19, 2000 (DE 23), be DENIED. All of Defendant's statements and all evidence seized from his vehicle and person are admissible.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the parties shall serve and file written objections, if any, with the Honorable Daniel T. K. Hurley within ten (10) days from the date of this Report and Recommendation.

DONE and RECOMMENDED this 23 day of June, 2000, in chambers at West Palm Beach in the Southern District of Florida.

ANN E. VITUNAC
United States Magistrate Judge

Copy to:

Lori Barrist, Assistant Federal Public Defender
Bruce Brown, Assistant United States Attorney

11